**FEILBACH CO. v. NILES, Collector of Internal Revenue.**

District Court, N. D. Ohio, W. D. March 25, 1927.

No. 3185.

1. **Internal revenue** ⊜⟹9(27)—**Enumerated section of Revenue Act held applicable for determining invested capital in computing excess profits tax, when definitive section is inapplicable (Revenue Act 1917, §§ 207, 210 [Comp. St. §§ 6336⅜h, 6336⅜k]).**

Revenue Act 1917, § 210 (Comp. St. § 6336⅜k), must be considered as administrative provision for guidance of Commissioner of Internal Revenue in determination of invested capital, on which computation of excess profits tax may be made, in those occasions when the very definitive section 207 (Comp. St. § 6336⅜h) cannot be applied.

2. **Internal revenue** ⊜⟹25—**Computation of invested capital under certain section of statute puts burden on claimant to show that Commissioner's act was unjustified (Revenue Act 1917, §§ 207, 210 [Comp. St. §§ 6336⅜h, 6336⅜k]).**

Where Commissioner of Internal Revenue computes invested capital under Revenue Act 1917, § 207 (Comp. St. § 6336⅜h), in computing excess profits tax, his action is presumed to exclude application of section 210 (Comp. St. § 6336⅜k); burden being on claimant for relief under latter section to show that Commissioner acted without justification.

3. **Internal revenue** ⊜⟹25—**Petition held not to show necessity for special assessment on ground that invested capital for computation of excess profits tax could not be ascertained under usual section of statute (Revenue Act 1917, §§ 207, 210 [Comp. St. §§ 6336⅜h, 6336⅜k]).**

Petition alleging that wholesale grocery company had not capitalized its good will, that 60 per cent. of its working capital was borrowed, that certain exclusive and valuable contracts were not carried as capital, and that officers of large and valuable experience were paid nominal salaries, *held* not to state circumstances requiring special assessment, under Revenue Act 1917, § 210 (Comp. St. § 6336⅜k), on the ground that the Commissioner of Internal Revenue could not satisfactorily ascertain invested capital for compensation of excess profits tax as usual, under section 207 (Comp. St. § 6336⅜h).

At Law. Action by the Feilbach Company against Frank B. Niles, Collector of Internal Revenue. Demurrer to petition sustained.

The pertinent allegations of the petition follow:

"During the year 1898 the plaintiff herein was incorporated under the name of 'the Feilbach Company,' pursuant to the laws of the state of Ohio; the purpose of said corporation being for the purpose of carrying on a general wholesale grocery business, the manufacturing and selling of such goods as are ordinarily dealt with in such business, and of buying and selling real estate as far as may be necessary for the securing of an adjustment of claims arising out of the business aforesaid.

"The authorized capital stock of said company was $200,000, divided into 2,000 shares of a par value of $100 each, and all the assets, both tangible and intangible, and including good will, of the partnership as aforesaid, were transferred to the corporation, and the capital stock of said corporation issued therefor.

"That thereafter the company continued to operate in the city of Toledo and surrounding territory, and had acquired a very valuable good will, and had acquired certain 'controlled' contracts of very exclusive brands of canned fruits, vegetables, and coffee, among others being the Del Monte brand, the 1492 brand, and Whitehouse Coffee brand.

"That under the Revenue Act of 1917 the plaintiff herein filed its return of net income for the fiscal year ended December 31, 1917, on the forms furnished to it therefor by the Commissioner of Internal Revenue, and made its return in strict accordance with the requirement of said statute, and computed its income in the manner provided by said statute, and paid a tax thereon in the amount of $34,326.86.

"Pursuant to the relief section of said 1917 revenue law, as shown by section 210, it thereafter made application for special assessment

for the reason and upon the facts hereinafter set forth.

"That during said period from 1883 until 1917 the plaintiff has expended large sums in producing and perfecting its good will; that said good will was not capitalized, and was not set up on the books of the plaintiff in the year 1917. By reason of said facts the plaintiff has realized large profits, due to capital invested as good will, creating an abnormality, and placing an exceptional hardship upon the plaintiff, because of said facts, and by reason of the gross disproportion between the rate of tax paid by this plaintiff and the rate of tax paid by representative corporations in the same line of business.

"The plaintiff is informed and believes, and therefore alleges, that other companies have capitalized their good will, and said good will has been allowed as part of the invested capital of said companies by the Commissioner of Internal Revenue, by reason of which the tax paid by the plaintiff herein is in great disproportion to the taxes paid by other concerns in the same line of business.

"The plaintiff further shows that the company was started with a limited amount of capital, and had always and was during the year 1917 operating its business upon a large amount of borrowed capital; that during the year 1917 the total borrowed capital was 60 per cent. of the total working capital of said company, and by reason of the provisions of the revenue law of 1917 disallowing borrowing capital of invested capital, the plaintiff herein has derived large profits from said borrowed capital, by reason of which an abnormality is created, and the plaintiff has paid a tax in gross disproportion to the rate of tax paid by representative concerns in the same line of business.

"The plaintiff further shows that it had from time to time, through its efforts, ability, good name, and industry, acquired the exclusive right and control of certain well-known brands in and for the city of Toledo and surrounding territory; that said exclusive contracts have been and still are at the present time of great value, and that the plaintiff derived large profits from and by reason of said contracts; that said contracts were not carried as a capital asset on the books of said company, and could not be and were not valued by the Commissioner for invested capital purposes, by reason of which large earnings have been made by this company upon which a tax has been paid by the plaintiff herein in great disproportion to representative concerns in the same line of business.

"The plaintiff herein further alleges that the officers of said company during 1917 were the original partners, and have been since 1883 and were then in control of said business, and said officers have had large and valuable experience and ability in the wholesale grocery business, but, notwithstanding the foregoing, the plaintiff herein has at all times adopted a conservative method of operating its business and has paid very nominal salaries to said officers. The plaintiff is informed and believes that representative concerns have paid and have been allowed by the Commissioner of Internal Revenue, greater salary deductions than allowed to the plaintiff herein, and by reason of such conservative methods and small salaries the plaintiff herein has paid a greater tax than other representative concerns.

"That by reason of the foregoing it is impossible for the taxpayer and the Commissioner to satisfactorily determine the invested capital of said plaintiff, whereby an abnormality is created, and the tax paid by the plaintiff herein is in great disproportion to the tax paid by representative concerns in the same line of business, by reason of which the plaintiff has been required and did pay a tax equal to 32.91 per cent. of its profits, while representative and competitive concerns in the same line of business have paid and were only required to pay a tax of approximately 12 per cent. of said profits."

Thomas O. Marlar (of Marshall, Melhorn, Marlar & Martin), of Toledo, Ohio, for plaintiff.

A. W. Gregg and Floyd F. Toomey, both of Washington, D. C., A. E. Bernsteen, U. S. Atty., of Cleveland, Ohio, and D. L. Sears, Asst. U. S. Atty., of Toledo, Ohio, for defendant.

KILLITS, District Judge. [1] Section 210 of the Revenue Act of 1917 (Comp. St. § 6336⅛k) must be considered to be an administrative provision for the guidance of the Commissioner of Internal Revenue in the determination of invested capital, upon which computation of excess profits tax may be made in those somewhat unusual occasions when the very definitive section (207 [Comp. St. § 6336⅛h]) cannot be applied. It seems obvious that the circumstances which would clothe the Commissioner with the discretion to apply section 210 would occur somewhat rarely in the administration of the law, because Congress was somewhat meticulous in its definition of what invested capital should be considered to be, and how it should be ascertained, in the writing of section 207, whose terms manifestly would meet the conditions in a vast majority of cases.

[2] The section under consideration, 210, is one whose provisions are to be invoked primarily and most generally by the Commissioner alone. Very, very rarely, and under quite extraordinary circumstances, it would seem, can the section be resorted to as a mode of relief by the taxpayer. The statute limits resort to it to only when the Commissioner finds that he cannot "satisfactorily" ascertain invested capital for the computation of excess profits tax under section 207. It would follow that, if the Commissioner or his agents actually computes capital under 207, his action should be presumed to exclude any application of section 210; the burden then being upon a claimant to relief under the provisions of the latter section to show that the Commissioner acted arbitrarily and without justification. It would be a rare case indeed wherein a court would be justified in concluding that the Commissioner could not

"satisfactorily" apply the provisions of section 207 to a determination of the question, when, in fact, the Commissioner satisfied himself that he could so do.

Reading the allegations of the petition in light of this consideration of the statutes in question and the Commissioner's action thereon, we find no reason for the interposition of the court in the form of a review of his judgment.

[3] It is evident that Congress, in framing section 207, intended, not only to prevent vague and difficult determinations through the examination of circumstances hard to establish, but to set up standards of determination so rigid and so easily applicable that only a very extraordinary condition would justify a finding that the section was not workable. Cartier v. Doyle (C. C. A.) 277 F. 150; La Belle Iron Works v. United States, 256 U. S. 377, 41 S. Ct. 528, 65 L. Ed. 998. Applying the authorities just cited and going to the four reasons set up as indicating that the Secretary of the Treasury in the instant case could not satisfactorily determine invested capital, we are unable to find that such a conclusion is a proper deduction. Section 207 seems to this court to read to the exclusion of any one of these four alleged facts; nor do the four of them cumulated tend to take the present situation out of the operation of the section in question, and therefore afford the plaintiff relief. On the contrary, as we read section 207, it negatives the ability of the taxpayer to resort to any of these reasons to exonerate it from the provisions of that section.

The demurrer, therefore, to the petition is sustained.